We will hear the first case, Aaliyah v. Salem Masonry. Good morning. Good morning, Ms. Westrick. Good morning, Your Honors. My name is Marie Ann Honings. I represent Aaliyah North America Insurance Company, and we are the appellant in this matter before the court. I would request three minutes be reserved for rebuttal time. Yes, Francis. Thank you. Excuse me. Aaliyah has brought this appeal, Your Honors, based upon its position that Judge Sheridan abused its discretion in granting the Rule 60B motion brought by Granite State. In this regard, Rule 60B does not permit relief from a judgment when the sole issue presented to the court is a change in decisional law. It's admitted that it was the change in decisional law, specifically the American Millennium Insurance Company v. Perganza Matter, decided by the appellate division in New Jersey to be subsequent to Judge Martini's decision. Wasn't that interlocutory at the time? In other words, you had no final determination because there still were issues outstanding. Is that right? That is correct. There were still issues outstanding. So why couldn't the court then change its decision? It turned out to be a different judge, but why didn't the court have the right to change its decision when the underlying law had changed? Well, I submit to the court that the appropriate remedy for Granite State would have been to have pursued an appeal at the end of the case, number one. Number two— At the end? You mean at the very end that it hasn't come yet? I'm sorry. You understand the question, Judge. At the very, very end, not when— Not at the time that the motion was brought, if I understand the court's question. You mean an appeal from Judge Martini's decision or Judge Charity's decision? No, it would have been an appeal from Judge Martini's decision. But American Millennium had not been decided. No, but at the time that the alia, this matter was concluded, American Millennium had been decided. So there was Judge Martini's decision. The case remained open. There were some open issues that had to be decided regarding the state claims. At that point in time is when the 60B motion was— But just to follow up on Judge Osmover's question, 60B is reserved for final judgments, isn't it? It is. Well, was Judge Sheridan's decision or Judge Martini's decision a final judgment? No, it wasn't. It was an inappropriate mechanism for the relief. What Judge Osmover's point is that 60B was the improper mechanism by which Judge Sheridan considered American Millennium. Correct. And I heard the word interlocutory appeal. Well, there was no request for an interlocutory appeal. I'm sorry. Interlocutory order. It was an interlocutory order. It was not a final judgment at that point in time. Can't the judge always reconsider an interlocutory order where justice requires? Well, I don't know specifically the answer to that question, Your Honor. I apologize. The answer is yes. But I would suggest that they can when the interest of justice requires. Under these circumstances, though, our position is that American Millennium did not require the reversal because the factual distinctions are rather significant between American Millennium and the Aletheia case. That's a different issue. Sure. In other words, and it's terribly interesting because the ABA was on the panel and we had this very issue before us. When the federal court sits deciding state law on an issue of state law and the state changes its law or comes out, clarifies, is the other way to say it, shouldn't the federal court, isn't the federal court obliged to go back as long as it has jurisdiction to reconsider? Well, I would submit that they're not obliged when it's an appellate division case. They may be obliged when it's a Supreme Court case. Here we do not have a Supreme Court case, which necessarily I think what the federal bench does out of necessity when there is no case law is to make a determination as to how the Supreme Court of a particular state is going to rule. It's an intermediate appellate court decision, though. Isn't that pretty persuasive as to what the law in New Jersey would be? Well, it is persuasive, but it's not mandatory for the court to have followed it. And it appeared that Judge Sheridan's position was that he had to follow it because it was an intermediary court. Was it a field to the New Jersey Supreme Court? It was not. We actually did follow through on that. There was not a significant amount of money at stake in the American Millennium matter, and so they did not pursue the appeal to the Supreme Court. So Judge Sheridan's interpretation of American Millennium is the most current and the best interpretation in New Jersey at the time? Well, the most current. I would respectfully disagree with the best interpretation of American Millennium. Okay, so why don't you tell us, you've said that you don't think it's applicable here. Assuming that Judge Sheridan was authorized to look at American Millennium, why isn't it dispositive? Well, I think the facts of American Millennium are different in that if you look at the way the application process occurred in the American Millennium matter, the application was submitted on January 19th of the applicable year. The questionnaire was sent to American Millennium on January 20th. The accident occurred on January 21st. The policy was not yet bound at that point in time. It was undisputed that Berganza had attempted to report that particular accident to American Millennium. They actually went to their agent who also, Berganza also tried to notify American Millennium's third-party risk manager. And the appellate division court determined that American Millennium had actual notice of the claim when it bound the policy. And then the policy was backdated to January 19th. And specifically... Was that the basis for its decision, refusing to rescind the policy? Well, it's one of the basis, and I think it's a significant basis because Judge Coburn specifically indicated that American Millennium, having followed the course which involved voluntarily taking the risk that occurred here, in addition for additional premium, it cannot now deny coverage as to the injured employee. What does that mean? Well, what does it mean is that... Is that suggesting that there was fraud involved or that the accident... No, it's not suggesting there was a fraud, but what it's suggesting is that when American Millennium bound the policy for Berganza, it knew of the specific claim that was made by Arias and underwrote it and got policy premium for it and was not going to be heard now after having made that decision to backdate the policy. It was not going to be heard now. How does that help you in this case? Well, in this case, the policy was bound and then the accident occurred. Aaliyah never underwrote this type of risk. Aaliyah didn't get paid premium for this type of risk. Aaliyah didn't undertake this type of risk. And I suggest to the court that the insurance company that did undertake this type of risk was Granite State and got paid premium for it because the way that the workers' compensation law is applied in New Jersey when the subcontractor's workers' compensation policy is not in existence, the contractor's policy needs to take over. Whatever happens, the worker who was injured, I gather rather seriously, because he fell 50 feet. He was injured seriously, yes. He'll get his workers' comp. The only issue is who has to pay. Correct. There are cases in which when the fraud is that of the beneficiary, it can be void rather than voidable. Correct. And I think that that's an important distinction because Judge Martini's decision said that this policy was void ab initio, not void of both, and so that it put it in a place such that the policy never existed. What was the circumstance in American Millennium? Was that void or voidable? I believe in American Millennium it was voidable. You say the policy in your case was void in the beginning. Ab initio. That's what the court determined. In which case you would be absolved of what? Paying for the injured worker or covering the subcontractor? We would be absolved from paying the injured. It's void from the inception as if the policy never existed. Okay. Now why would the policy in this case be completely void where it was not void in American Millennium? Well, again, the distinction that we make is that in this case, the fraud was at the inception and Aaliyah did not underwrite nor assume this type of risk. It was specifically the way the policy questionnaire was whether or not you did work above 15 feet. Don't New Jersey statutes say even in that case that the policy still covers the injured worker? Well, in certain circumstances, yes. But the situation I think that we have here is that because I think the court in American Millennium rightfully looked to who's actually underwriting and who's insuring the risk and who's actually getting a premium for that risk. And it's submitted that Aaliyah did not underwrite or insure for that particular risk that it was Granite State who undertook and insured for such a risk that when their subcontractors would not have insurance, they would have to step in and be responsible. In your brief, you make a big point about the fact that Judge Sheridan reconsidered the decision of Judge Martini and you say that was wrong. You haven't made such a big point. Are you withdrawing that point after we asked you the questions about the interlocutory nature? Yes, Your Honor. I think that would be prudent on that point. Yeah, well, I think that is prudent for you. And take a good leap eventually. Go ahead. You still have a little time if you want. No, I think that at this point I'll just... Okay, thank you. We'll get you back on your... Do you have any more questions? We'll get you back on rebuttal. Thank you. Thank you. We'll hear from Mr. Westrick. Thank you, Your Honors. Good morning. Christopher Westrick, Golden Rothschild, on behalf of Granite State Insurance Company. It seems like I need not address the aspect of Rule 60B as being appropriate here given the interlocutory nature of the order that argument has been withdrawn. Unless the Court has any particular questions on that, I'm going to move on to my latter points, specifically that American Millennium, first of all, is indeed persuasive authority for this Court. However, it is extremely strong persuasive authority. While not having the binding effect of the decision from the New Jersey Supreme Court, Judge Sheridan points out he makes two citations in his decision to explain why indeed American Millennium should be followed by the federal court. One is a cite to Judge Slobiter, your law review article back in 1992, indicating that... Sorry, Judge. I didn't do what Judge Sheridan did. Indicating that a federal court must view this type of authority as a state court would. Well, the American Millennium decision is binding authority for all state courts in New Jersey with the exception... Tell me a little bit... Judge Fuentes is from New Jersey, so he'd know the answer, but I don't. Is there more than one intermediate appellate court in New Jersey, or is there only one? There is one appellate division level, Your Honor. There are multiple panels that sit in different parts of the state. Does one panel have to follow another panel? I believe that is correct, Judge, and I'm sure you would correct me if I was... Actually, I'm not sure about that. I believe that is the case. I haven't seen some of the decisions. Then that decision is definitive. It is the authority for all New Jersey courts until overruled by the Supreme Court. That is correct, Judge Nygaard. It is as good as it gets in New Jersey unless the New Jersey Supreme Court decides to weigh in. It is binding throughout the state, so under that analysis, the American Millennium case... It's a great eerie question. Go ahead. Assuming that it is binding, what effect does it have on this case? Yeah. The effect it has on this case means that Judge Sheridan ruled absolutely correctly here because... Well, you're the appellee. We can understand that you would say that. Indeed, Your Honor. The American Millennium case is completely analogous to our case, save for a couple of facts that really aren't relevant to the analysis we're here to talk about. Well, I'm not sure about that because it seems to me that having looked at American Millennium, there was a failure to communicate to the insurer the date of the worker's injury. It occurred apparently after the application process, whereas in this case there was a fraud, as I understand it, committed before the applicant, or at the time the application was made. And the fraud was that we will not work beyond 15 feet, where in fact the worker fell five stories down. Yes, Your Honor. And as I understand it, one of the reasons for that may be to get a better cut on the insurance premiums. So I think the circumstances here are quite different. Allow me to correct the record, Your Honor, because there seems to be a little bit of confusion that seems to derive from the argument the appellant makes, which involves references by Judge Coburn in his decision to Professor Larson's workman's compensation text. Judge Larson explains that scenario where there is an accident that predates the application. You mean Judge Coburn? No, I mean Professor Larson, Your Honor, respectfully. Professor Larson in the workman's compensation treatise explains a situation where the accident predates the application. In that case, the employer applying for insurance is applying for insurance for that accident and misrepresenting what's gone on and securing the policy under a fraudulent scenario. Now, the facts of American Millennium are different. Your Honor just recited the facts in our case where there was allegedly a misrepresentation in the application. In American Millennium, the exact same thing occurred. The appellate division case in American Millennium acknowledges the finding of the trial court that there was fraud in the application. What was the fraud? It's not explained in the decision. But Judge Coburn accepted the finding of the trial court. It was apparently not an issue on the appeal because it's not discussed in the opinion. But there is a specific reference, and it appears on page 492 of American Millennium. Actually, it occurs in two different places. The one I marked here is on page 492 where Judge Coburn writes, although we will assume Berganza made fraudulent statements in the application and questionnaire as found by the trial judge, thereby justifying rescission as to him. And Judge Coburn goes on to talk about the reporting of the accident. In fact, what he goes on to say is that Berganza in that case promptly reported the accident as a matter of fact. So under this opinion, a fraud in the application process would not serve as a basis to rescind the policy? Judge Coburn found, Judge Coburn affirmed the decision of the trial court permitting the rescission of the policy as to the employer, but reversed the trial court decision permitting the rescission as to the injured worker. Is that based on the Larson statement which was cited in American Millennium that as between the insurer and the employee, defenses based on the misconduct of the employer are of no relevance? I'm searching for that particular quote, Your Honor, but I believe that is correct. The reference to Larson is an acknowledgment by Judge Coburn where he states the doctrine, after subscribing to the doctrine that an employer's fraud in an application for worker's compensation insurance would not provide a defense for the insurance company against an action by the employee for benefits. That's what we have in our case and also what exists in American Millennium. Professor Larson goes on to observe that the opposite may be so when the employer tries to obtain insurance for an accident that has already happened. And Professor Larson is quoted in the Coburn decision explaining that other situation, but that's not the situation in American Millennium. So your answer to Judge Fuentes is that the policy can be rescinded based on fraud in the application, but the employee gets paid anyway. That's correct. But the employee would get paid anyway irrespective of which insurer has to pay it, and you agree on that. Well, Your Honor, there is a statute in New Jersey commonly called, and Judge Fuentes will probably be aware of it, what's referred to as the statutory employer law, loosely called that, which is 34-15-79, which requires a general contractor in a situation where the subcontractor either loses or has no worker's comp insurance to drop down and provide comp coverage to that injured employee. And in this case, Aaliyah is the general contractor. No, no. Aaliyah has the subcontractor. Granite State has the general contractor, Your Honor. I have two things to say about that. Number one, and this isn't an issue that has been put before this Court in the briefing, but the simple fact that there exists another policy here, we could easily have a scenario where Salem Masonry is the general contractor who the injured worker works for here, and there is no contractor above them, in which case there is no additional layer of insurance to protect the injured worker. But the worker would get, I mean, you can't work on the, I mean, the whole point of worker's comp is that a contractor can't work, general or sub, can't work on the job unless the contractor or sub is carrying worker's comp, right? I mean, that's the law. That's the law. The law of every state, as long as I know. That's the law. Sure. It's a protection for the employee. Yes, but what I'm saying, Your Honor, is that by mere happenstance that there is this general and subcontractor relationship in this particular case should not affect the legal ruling here as to whether the policy can be rescinded as to the injured worker. And my second point, however... Well, the dispute here is who pays, right? I mean, it's not whether the injured worker is going to receive benefits. Well, Your Honor, it really isn't a question of who pays, and I respectfully disagree. And the reason why is that, and this goes to my second point, as Judge Coburn found in American Millennium,  never comes into play in this scenario. Judge Coburn recognized that statute in his decision, but what he said is, and this was one of the two critical reasons for his ruling in that case, what he said is that the New Jersey Workers' Compensation Act creates a direct statutory relationship between the workers' compensation insurer, Aaliyah, and the injured worker, Mr. Alexandre. Let me take you in a different direction. Yes. I'm looking at this in terms of... I'm keeping in mind the New Jersey statutes, but I look at it in terms of conventional contract law. And what you have here is a misrepresentation made at the time an application was made. Normally, there's no mutual assent to a contract, and in this case, the policy would be rescinded. But doesn't this encourage the making of fraudulent statements by subcontractors in order to get insurance at a lower rate if we were to adopt the view that you're taking? In other words, I could be a subcontractor, hypothetically speaking, and I have 15 employees, and I know if I tell the insurance company I've got 15 employees, I'm going to get a high premium. In fact, I have 30 employees, and a good portion of them get injured at the work site. Isn't that a fraud that would rescind the policy? Or, alternatively, doesn't that encourage the making of fraudulent statements to get lower premiums? That ought to be considered a fraud, Your Honor, and it's difficult for me to say if that would have the ultimate effect of encouraging more fraudulent activity. There are still consequences. But that's, of course, what happened here, isn't it? What happened here, there are disputed facts about the misrepresentation on the application. Well, don't we have to accept the fact that Salem said nobody worked above 15 feet, and that was not true? Yes, indeed, that hasn't been raised on this. I would think the insurance would be higher, would be a higher premium for those who work at a higher level that is above 15 feet. And that's why... That's the concept, yes. So I say, well, we're not going to work above 15 feet so I get a better break on the premium. Well, I suppose that's always a possibility that the outcome could be additional fraud. But the bottom line here is that we have an innocent injured worker, and Judge Coburn's decision says you cannot rescind under these circumstances. Of course, the fraud is the fraud of the employer, not the fraud of the insurance company. Correct, and there are cases... that have been cited by the appellant in her brief where you have the actual actor who commits the fraud. You have the principal on behalf of an entity. Well, those cases are different. They're completely different, and that's why I just raised it to make the point that here we have an innocent injured worker who has nothing to do with the fraud on the application. Yeah, but that's not the issue. But everybody here concedes Mr. Alexandre is going to get paid. Yes. And the question is, which of you pays him? Well, that's right. The question of rescission, though... I suppose you might say the subcontractor's insurance is in a better position to inspect the circumstances of employment. Absolutely so, Your Honor. We haven't delved into that in our papers, but that's a very valid point. And it speaks to the question raised by Ms. Honings as to who undertakes what risk on this. And I'll go back to the issue of what the statutory obligation is, the statutory direct relationship that Judge Coburn found between the workers' compensation carrier and the injured worker. That's in the New Jersey statutes at 34-15-83 and 84, and it's unquestioned. That direct relationship is what allows the injured worker to bring the suit in comp court against the comp insurer directly. That was one of the critical grounds upon which Judge Coburn arrived at his ultimate decision. Because of that direct relationship, the question of whether there's an undertaking of risk really isn't even on the table. Neither is the statutory employer law, which was referenced earlier, and which is the mechanism that would result in Granite State dropping down under a different set of circumstances to insure Mr. Alexandria. But we don't have those circumstances here. I see that my time is about to expire. Thank you for your time, and we're asking, obviously, that the court affirm Judge Sheridan. Thank you. Yes. Judge Fuentes made a very telling point that I hadn't thought about, and I'd like you to respond to it. He said, or he asked, isn't the subcontractor's insurer the party who's most able to protect itself because it has a direct relationship with the insured employer, and it can go out and check whether, in fact, the work is being done above 15 feet? Well, they're in the same position as the contractors insurer. I don't know that it's a better position. I would suggest that it's in the same position, and in that the statute, the employer liability statute that we've been referring to, obligates the contractor to ensure that its subcontractors have the appropriate insurance. I think it's worth considering that the subcontractor's insurance is insuring a very specific activity, which is the activity of the subcontractor versus other subcontractors on the general project. I would agree with you, Your Honor. I think that American Millennium, though, and I'll direct the court back to the conclusion by Judge Coburn, really turns on the fact that American Millennium undertook the specific risk by backdating the policy, the court having found they had actual notice of the accident and then insured that accident and then tried to back out based upon an alleged fraud in the policy. So it was kind of a back way. One was a late notice claim and then the other was the fraud, and the court was not going to permit that under those circumstances. And I think it's an important factual issue here because not only would Aaliyah... It's not a situation where Aaliyah would have charged more premiums. It's a situation where Aaliyah would not have underwritten it at all. They do not write that kind of risk. And so that there's a fraud perpetrated at the very beginning and the relationship that the injured worker has with Aaliyah is the same relationship the injured worker has with Granite State because of the way the workers' compensation law, the interplay of the New Jersey workers' compensation law plays. And the court found that the drop down in GATOS was appropriate because the contractor, meaning the general contractor, had the opportunity to select contractors who have obtained proper insurance coverage and the contractor received the benefit of the work precisely as though he had done it directly by his own employees. So that relationship exists for both Aaliyah as well as Granite State with regard to Ms. Alexandria, not just Aaliyah. Let me ask you a question. When this court writes opinions, we write it for the district judges throughout the circuit. What is the legal point in this case that we would have to cope with in a, say, a precedential opinion? Well, when there's a determination that there's a fraud at the inception such that the policy is void ad venitio and it doesn't exist, whether or not that relieves the workers' compensation carrier... When you say at the inception,  or in... In the... Simultaneous with the... Simultaneous with the application. I don't think American Millennium considered the policy void ad venitio, as I read it. No, American Millennium did not. Judge Martini did, and Judge Sheridan, in his decision, did not change any of those factual findings. I'm sorry to have to tell you, but your red light is on. Thank you very much. Thank you. Have a nice day. Thank you, Grace, and we'll take the matter under advisement.